ON REHEARING
LEIGH M. CLARK, Retired Circuit Judge.
In compliance with appellee’s request pursuant to Rule 39(k) of the Rules of Appellate Procedure, the following is added to the opinion on original submission:
The robbery took place on December 9, 1976. The defendant’s ex-wife testified as an alibi witness that she and the defendant accompanied an elderly couple to Ft. Lauderdale in December 1976. When questioned about the exact date on direct examination, the following occurred:
“Q. Do you recall when you may have left Alabama and when you may have returned, approximately?
“A. Not exactly the date.
“Q. Do you recall if you and Bruce Carroll were in Orlando, Florida, on December 9th and 10th.
“A. We were there the 10th, because that was my niece’s birthday and I didn’t get her anything.”
[Emphases are appellee’s].
The writer now observes inexactitude and oversimplification in his statement in the original opinion as follows: “The evidence of guilt was strong and almost conclusive, but a witness for defendant, his former wife, testified positively as to an alibi, saying she and defendant were together in Florida at the time the robbery was committed.” The statement is hereby modified to read, “The evidence of guilt was strong and almost conclusive, but a witness for defendant, who was married to him at the time of the alleged crime and who was thereafter divorced from him and married to another before and at the time of the trial, testified positively that she and defendant were in Orlando, Florida, on December 10, 1979.” In addition, the following is a part of her testimony:
“Q. Do you recall your whereabouts there the first two weeks of December of ’76?
“A. Well, we were living at my mother’s. That was just before we moved out in January. And we had taken a little vacation the first of December.
“Q. Where had you taken that vacation to?
“A. Fort Lauderdale.
“Q. And who went with you, if anyone? “A. It’s an old couple, an old lady that worked for me. It was her parents. It was Mr. and Mrs. Chambers.
“Q. And whereabouts in Florida did you go?
“A. We went to Fort Lauderdale; these people wanted to visit their children down there, and then we went on to Orlando.

“Q. All right. Do you know what time you got back?
“A. I don’t know. I think it was around the 13th or 14th or 15th, or something along there. I don’t remember the exact date, no.
“Q. Okay. Did you say where you were living in Alabama at that particular time, what town?
“A. We lived on Smith Lake.

“Q. Mrs. Bass, During your stay in Orlando, Florida on this trip that you have discussed, was Bruce away from you at any time on up to — come back to Alabama and back to Florida, that you recall?
“A. Why, no.
“Q. He wasn’t?
“A. No.
“Q. Were you all there in one car? “A. A pickup truck.
“Q. Were you separated on any particular night that you were there?
“A. No, sir. I didn’t go anywhere without him.”
*176 On cross-examination thereafter is a part of her testimony:
“Q. ... When did you and Bruce Carroll go to Florida on this—
“A. I don’t remember the exact date, but I know it was around the first of December; it was the 3rd or 4th or something like that.
“Q. And this was 1970 what?
“A. ’77?
“Q. ’77?
“A. ’76.
“Q. Was it ’76 or ’77?
“A. It was in 1976, because we separated in 1977.
“Q. Are you sure?
“A. Oh, yes.
“Q. Could it have been in ’75?
“A. No, not hardly.

“Q. You all just went on a trip to Florida?
“A. Well, they hired us to take them. Well, they didn’t hire us, they told us that if we would like to go on a trip with them that they would pay all of our expenses, so we went.
“Q. Where did they stay?
“A. At their children’s.
“Q. And where was that?
“A. Fort Lauderdale.
“Q. And you stayed there?
“A. Well, not in just one particular place. We stayed there one night, the best I remember, and then we went on up to Orlando and visited a friend of ours.

“Q. What day of the week did you leave going to Florida?
“A. Now, that’s another question. I don’t know. I don’t even remember. “Q. What day of the week did you come back?
“A. I don’t remember that, either.
“Q. How long did you stay in Florida? “A. Gee, I don’t know; ten or twelve days.
“Q. All right. And you went in Chambers’ pickup?
“A. Uh-huh.
“Q. How many of you were there?
“A. Four.
“Q. Four?
“A. Mr. and Mrs. Chambers and Bruce and me.
“Q. A pickup truck?
“A. Uh-huh. He had a camper in the back.”
In its application for rehearing appellee states, “The trial court in his oral charge to the jury explained the presumption of innocence as follows: (R. 202-203).
‘Now, the Defendant in this case, just as the Defendant in every Criminal Case tried within the State of Alabama, is presumed innocent. The presumption of innocence of a Defendant in a Criminal Case attaches from the very time that the finger of the Law points toward the Defendant, up until his case is taken before the Grand Jury, up until he is indicted and brought before you, the jury, and I submit to you right at this very time, the Defendant is still presumed to be innocent, that he must still be shielded by that presumption of innocence until you have retired to the jury room, and from your consideration of all the evidence in this case you are convinced beyond a reasonable doubt and to a moral certainty that he is guilty. When and if, of course, after consideration of the evidence in this case you find that the state has met the burden of proof, and you are convinced beyond a reasonable doubt and to a moral certainty, then of course he is no longer entitled to the presumption of innocence, because it has been overcome by the evidence. And then it is just as much your duty to convict him, if you feel from the evidence that he is guilty, as it is to acquit him if the evidence fails to produce that abiding conviction in your mind. ‘So as a matter of Law, I charge you that you cannot convict the Defendant in this case until the presumption of innocence has been overcome by the evidence, which has been given to you in this case, and from that evidence and your considera-' *177 tion of the evidence you are convinced beyond a reasonable doubt and to a moral certainty that he is guilty.’ ”
It is not clear whether appellee requests that the above quoted excerpt from the oral charge of the trial court be added to this opinion in accordance with Rule 39(k) of the Rules of Appellate Procedure. Although the inclusion thereof is not required by Rule 39(k), we think it well that we state that we have compared it with the transcript of the oral charge and find it to be an exact reproduction of the quoted portion thereof. We look in vain to find therein any statement setting forth the principle that the presumption of innocence is to be regarded by the jury, or that it attends the accused, “as a matter of evidence” until properly overcome by the evidence. The part of the oral charge quoted gives expression to the word “evidence” several times; in most of the times it is referable to the evidence against the defendant that overcomes the presumption. In no instance is there reference to the value of the presumption as if it were evidence in favor of defendant.
We make no special effort at this time to advocate or defend the well-established principle that the presumption of innocence in a criminal case is to be considered as attending the defendant as a matter of evidence until properly overcome and that a defendant is entitled to have the jury instructed accordingly. However, we find no basis whatever for concluding that the principle was substantially covered by the court’s oral charge.
We continue to wonder whether a reversal constitutes a Pyrric victory for appellant as indicated in our original opinion, but, whether so or not, in the absence of action by appellant in the nature of a motion to dismiss the appeal, we are required to seek and find, if we can, error in the record prejudicial to defendant and be governed accordingly, irrespective of its value to either party.
Unchanged is our opinion that calls for a reversal of the judgment and a remandment of the cause.
The application for rehearing should be overruled.
OPINION MODIFIED AND EXTENDED; APPLICATION FOR REHEARING OVERRULED.
All the Judges concur.